## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2013-NMSC-034**

**Filing Date: June 27, 2013**

**Docket No. 32,929**

**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**ORLANDO TORREZ,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Michael Eugene Vigil, District Judge**

Robert E. Tangora, L.L.C
Robert E. Tangora
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**CHÁVEZ, Justice.**

**{1}** In this case we discuss, among other issues, how the district court astutely avoided a double jeopardy violation in this felony murder trial. Defendant Orlando Torrez fired multiple shots at a house where he had attended a party earlier in the evening, killing one person and injuring another. A jury rejected his claim of self-defense and found him guilty of felony murder predicated on the felony of shooting at a dwelling resulting in death. The jury also found him guilty of shooting at a dwelling or occupied building and tampering with evidence. Defendant raises several issues on appeal, which we place in four categories for

1

purposes of our discussion: (1) two alleged double jeopardy violations, (2) alleged error in refusing two jury instructions, (3) alleged denial of compulsory process when a witness subpoenaed to testify on his behalf did not appear, and (4) alleged insufficiency of the evidence to support each conviction. We are not persuaded by any of these issues, and we therefore affirm Defendant's convictions.

## I.      BACKGROUND

**{2}**      On October 31, 2003, Defendant and four others went to a house party near Taos, New Mexico. Defendant claimed that during the party he became involved in an altercation with another man who had insulted his girlfriend, and that he was also threatened by two unidentified men later that night. After the threats, Defendant, his friend Alfredo, and their three female companions exited the house and walked to Defendant's vehicle, when Defendant noticed that the driver's side window of his car was broken. Defendant testified that he noticed that his sawed-off .22 caliber rifle was missing, so he walked back toward the house, when he heard gunshots. Defendant was approached by the two men who had threatened him earlier, each of whom was holding a gun, who told Defendant that he needed to leave immediately or he and his passengers would be killed. As Defendant and the others drove away, Defendant's vehicle was shot at multiple times and hit twice.

**{3}**      Defendant went to his home and he and Alfredo retrieved three rifles, two shotguns, and one handgun. They then returned to the party. Testimony regarding what happened next is conflicting. Defendant alleged that he returned to the party, armed himself with a 9 millimeter handgun, and walked to the house, where he was assaulted from behind, causing him to lose his weapon. Defendant alleged that he freed himself from the assault and ran back toward the car while shots rang out. Once he was back at the car, Defendant claimed that he took out a rifle and shot in the direction of muzzle flashes.

**{4}**      The State alleged that when Defendant and Alfredo arrived back at the party, they stopped the car, got out, and began firing at the house. In any case, two partygoers inside the house were shot; Naarah Holgate was struck in the left arm, and Danica Concha was hit in the chest. Holgate survived her injury and Concha was pronounced dead in the early hours of November 1, 2003.

## II.     DOUBLE JEOPARDY

**{5}**      This is Defendant's second appeal in this case. During his first trial, Defendant was charged with and convicted of first degree murder, shooting at a dwelling or occupied building, and tampering with evidence. In Defendant's first appeal, we reversed his convictions and remanded for a new trial, finding error in the admission of testimony by a gang expert. *State v. Torrez*, 2009-NMSC-029, ¶ 34, 146 N.M. 331, 210 P.3d 228. Defendant raises two double jeopardy arguments in this appeal. First, he argues that the Double Jeopardy Clause precluded the State from prosecuting him for depraved mind murder during the second trial because he was implicitly acquitted of depraved mind murder during

2

his first trial. Second, Defendant argues that the Double Jeopardy Clause precludes him from being punished for both felony murder and the predicate felony of shooting at a dwelling. For the reasons that follow, we conclude that Defendant's arguments are without merit.

**A.      Defendant's Double Jeopardy Rights Were Not Violated When He Was Tried for First Degree Murder under Alternative Theories (Depraved Mind Murder and Felony Murder) in His Second Trial**

**{6}**      In his first trial, Defendant was charged with first degree murder under two alternative theories: felony murder and depraved mind murder. The jury returned a general verdict of guilty on the murder charge, and therefore it did not indicate under which alternative it had determined that he was guilty. However, in the judgment and sentence, the district court indicated that Defendant was found guilty of "Murder in the First Degree (Felony Murder)."

**{7}**      After we reversed Defendant's convictions, the State re-filed the charges. Defendant filed a motion to preclude the State from pursuing a conviction of first degree murder based on depraved mind murder, contending that he was acquitted of depraved mind murder during his first trial. Defendant was ultimately tried under both theories and convicted of felony murder. The jury did not enter a verdict on depraved mind murder.

**{8}**      On appeal, Defendant argues that because the judgment and sentence entered in the first trial stated that he was found guilty of felony murder, he was implicitly acquitted of depraved mind murder. Defendant points out that the State did not appeal the validity of the judgment and sentence in his first appeal, and argues that it was a stipulation between the parties. Therefore, Defendant argues that his right to be free from double jeopardy was violated because he can only be retried "for the offense which resulted in a conviction in the first trial"—i.e., felony murder.

**{9}**      The State denies that there was a stipulation and cites *State v. Davis*, 97 N.M. 745, 748, 643 P.2d 614, 617 (Ct. App. 1982), to support its contention that neither the judge nor the parties may agree to a verdict that is different from the jury's actual verdict. We agree with the State.

**{10}**      The jury in Defendant's first trial entered a general verdict of guilty of first degree murder, but it did not specify whether its verdict was based on felony murder, depraved mind murder, or both. Therefore, neither we nor the district court could know under which theory Defendant was convicted. In *Davis*, the Court of Appeals explained that a district court has a mandatory duty to enter a judgment and sentence consistent with the jury's verdict. *Id.*; *see* Rule 5-701(A) NMRA ("If the defendant is found guilty, a judgment of guilty shall be rendered. If the defendant has been acquitted, a judgment of not guilty shall be rendered."). A district court does not have the authority to override a jury's verdict and enter a verdict different than that handed down by the jury. *See State v. Soliz*, 79 N.M. 263, 267, 442 P.2d

3

575, 579 (1968) (requiring that the judgment be amended to conform with the jury's verdict). Following the first trial, the district court should simply have entered a judgment stating that the jury found Defendant guilty of first degree murder. Defendant was neither expressly nor impliedly acquitted of depraved mind murder.

**{11}**     Both the United States and the New Mexico Constitutions protect a defendant's right to be free from double jeopardy. U.S. Const. amends. V, XIV, § 1; N.M. Const. art. II, § 15. The Legislature has elaborated on the protections afforded to an accused by the Double Jeopardy Clause in NMSA 1978, Section 30-1-10 (1963), which provides, in relevant part, that "[w]hen the indictment, information or complaint charges different crimes or different degrees of the same crime and a new trial is granted the accused, he [or she] may not again be tried for a crime or degree of the crime greater than the one of which he [or she] was originally convicted." *See also State v. Lynch*, 2003-NMSC-020, ¶ 22, 134 N.M. 139, 74 P.3d 73 (stating that a new trial should not involve an "offense of a greater degree than the degree of which [the defendant] had been convicted at the prior trial"). Depraved mind murder and felony murder are both first degree felonies. NMSA 1978, § 30-2-1(A)(2) & (3) (1963, as recodified through 1994). Therefore, retrial under both first degree felonies—felony murder and depraved mind murder—did not violate Defendant's right to be free from double jeopardy.

**{12}**     Our jurisprudence is consistent with that of other jurisdictions. In *Commonwealth v. Carlino*, 865 N.E.2d 767 (Mass. 2007), the Supreme Judicial Court of Massachusetts decided a very similar issue as that raised by Defendant in the instant case. The defendant in *Carlino* was tried on three theories of first degree murder and convicted on two theories, as indicated by the jury on the verdict slip. *Id.* at 769. Regarding the third theory, which was based on felony murder, the jury did not indicate whether it found the defendant guilty or not guilty. *Id.* Massachusetts' highest court reversed the defendant's conviction, and he was then retried. *Id.* at 769-70. At the second trial, the jury was again asked to consider all three theories of first degree murder, and the defendant was found guilty under all three theories. *Id.* at 770. The defendant appealed, arguing that his double jeopardy rights had been violated because the jury in his second trial was allowed to convict on a felony murder theory that he claimed was rejected by the jury in his first trial. *Id.*

**{13}**     The *Carlino* court framed the question as whether the jury's silence on the felony murder theory in the first trial was an acquittal for purposes of double jeopardy. *Id.* at 774. Like Defendant in the instant case, the defendant in *Carlino* cited *Green v. United States*, 355 U.S. 184, 189-98 (1957), in which the United States Supreme Court held that "silence on a charge of murder in the first degree and conviction of the lesser included offense of murder in the second degree implied an acquittal of the greater offense." *Carlino*, 865 N.E.2d at 774 (describing *Green*). The *Carlino* court noted that *Green* has never been read as broadly as the defendant suggested, and "[c]ourts have refused to imply an acquittal unless a conviction of one crime logically excludes guilt of another crime." *Carlino*, 865 N.E.2d at 774. The *Carlino* court also concluded that "[t]he jury's failure to check the felony-murder box could not operate as a conviction; likewise, it does not operate as an

4

acquittal." *Id*. at 775. Thus, there was no double jeopardy violation. *Id.*

**{14}** Here, Defendant makes the exact argument advanced in *Carlino*, and, as in *Carlino*, his argument is unavailing. Defendant's double jeopardy rights were not violated when he was retried for first degree murder under felony murder and depraved mind murder theories.

**B. Defendant's Double Jeopardy Rights Were Not Violated When He Was Convicted of Felony Murder with Shooting at a Dwelling as the Predicate Felony Because that Conviction Was Based on Different Conduct than His Separate Conviction for Shooting at a Dwelling**

**{15}** Defendant contends that his right to be free from double jeopardy was violated because he was convicted of both felony murder and the predicate felony of shooting at a dwelling. The general rule is that when a jury convicts a defendant of both felony murder and the same felony upon which the felony murder conviction is predicated, the predicate felony must be vacated to avoid a double jeopardy violation. *State v. Frazier*, 2007-NMSC-032, ¶ 1, 142 N.M. 120, 164 P.3d 1. The predicate felony is vacated because it is subsumed within the felony murder conviction. *Id.* For example, in *Frazier* the defendant was convicted of (among other crimes), kidnapping and felony murder predicated on the same kidnapping. *Id.* ¶ 4. We vacated the kidnapping conviction in *Frazier* to cure the double jeopardy violation. *Id.* ¶ 40.

**{16}** Although vacating the predicate felony is one way to cure a double jeopardy violation, this case illustrates how a double jeopardy violation in a felony murder trial may be avoided altogether. In this case, Defendant was not convicted of shooting at a dwelling and felony murder based on the same shooting at a dwelling charge. Instead, Defendant was found guilty of felony murder based on the predicate felony of shooting at a dwelling resulting in the death of Danica Concha, and also found guilty of a separate count of shooting at a dwelling which resulted in the injury of a second victim, Naarah Holgate. Although the jury considered that the elements of shooting at a dwelling resulting in the death of Danica Concha supported the felony murder conviction, the jury was not asked to enter a separate verdict on the same predicate felony, thus avoiding the double jeopardy problem of multiple punishments for the same offense.

**{17}** The history of the case explains why there was no violation of the Double Jeopardy Clause. Count 1 of the indictment charged Defendant with depraved mind murder, or in the alternative, the felony murder of Danica Concha during the commission of the felony of shooting at a dwelling. Count 2 charged Defendant with shooting at a dwelling resulting in the injury of Naarah Holgate. At the commencement of voir dire, the district court read the indictment to the jury venire, which indicated that Defendant was charged with three counts. Count 1 alleged first degree murder for the death of Danica Concha. Count 2 alleged shooting at a dwelling resulting in injury to Naarah Holgate. Count 3 alleged tampering with evidence.

5

**{18}** At the conclusion of the evidence phase, the jury was instructed on felony murder with the predicate felony of shooting at a dwelling immediately following the felony murder instruction. These two instructions read as follows:

> For you to find the defendant Orlando Torrez guilty of felony murder, which is first degree murder, as charged in the alternative in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant Orlando Torrez committed the crime of shooting at a dwelling or occupied building;
>
> 2. Orlando Torrez caused the death of Danica Concha during the commission of the crime of Shooting at a Dwelling or Occupied Building;
>
> 3. Orlando Torrez intended to kill or knew that his acts created a strong probability of death or great bodily harm;
>
> 4. The defendant did not act in self-defense;
>
> 5. This happened in New Mexico on or about the 1st day of November, 2003.

This instruction was immediately followed by the elements instruction for the predicate felony of shooting at a dwelling.

> In New Mexico, the elements of the crime of Shooting at a Dwelling or Occupied Building, are as follows:
>
> 1. The defendant willfully shot a firearm at a dwelling or occupied building;
>
> 2. The defendant knew that the building was a dwelling or occupied;
>
> 3. The defendant did not act in self-defense;
>
> 4. The defendant caused the death of Danica Concha.

*See* UJI 14-340 NMRA. The shooting at a dwelling instruction that was subsumed within the felony murder instruction clearly indicated that it related to the shooting death of Danica Concha. In addition, the district court's instruction to the jury regarding accessory liability

6

for felony murder instructed the jury that to find accessory liability, it must find, among other elements, that during the commission of the felony of shooting at a dwelling, Danica Concha was killed.

**{19}** Thirteen instructions later, the jury was instructed on the felony of shooting at a dwelling as charged in Count 2, the count that identified the victim as Naarah Holgate. The instruction does not specifically identify Naarah Holgate as the victim, or that she was injured. However, in the instruction that explains the mens rea requirement for shooting at a dwelling, the district court included a parenthetical with the word "injury" which, while not a model of clarity, was clearly intended to alert the jury that this particular shooting at a dwelling instruction involved an injury to someone. Count 2 of the indictment that was read to the jury identified that someone as Naarah Holgate. Therefore, when read in context, it was clear that the first shooting at a dwelling instruction that immediately followed the felony murder instruction was the predicate for felony murder, and the second shooting at a dwelling instruction related only to the injured victim. To improve the clarity of the jury instruction, the parties could have specifically included the victim's name in one of the elements, such as "Naarah Holgate was injured by the shooting." Had the parties done so, the instruction would have read as follows:

> For you to find the defendant guilty of shooting at an inhabited dwelling or occupied building as charged in Count 2, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements:
>
> 1.   The defendant willfully shot a firearm at a dwelling or occupied building;
>
> 2.   The defendant knew that the building was a dwelling or occupied building;
>
> 3.   Naarah Holgate was injured by the shooting;
>
> 4.   This happened in New Mexico on or about the 1st day of November, 2003.

**{20}** The jury returned three guilty verdicts against Defendant, one for each count in the indictment. The State contends that the separate guilty verdict of shooting at a dwelling as charged in Count 2, which relates to the injured victim and not to the decedent, does not result in a double jeopardy violation because, as we stated in *Frazier*, "if the facts support multiple charges of a particular felony which can be sustained under a unit-of-prosecution analysis, then the State is free to use one of those charges as the predicate felony and obtain separate convictions for the other charges." 2007-NMSC-032, ¶ 27. We agree. It is a settled principle that when there are two victims and each suffered a separate and distinct harm, a defendant can be convicted of two counts of the same offense, one for each victim, without violating double jeopardy principles. *See State v. Bernal*, 2006-NMSC-050, ¶¶ 18,

7

20, 140 N.M. 644, 146 P.3d 289 (concluding that there were two offenses where two victims suffered separate and distinct harm).

**{21}** Defendant was not convicted of felony murder and two separate counts of shooting at a dwelling. The district court avoided the double jeopardy problem by requiring the jury to find all of the elements of felony murder, plus shooting at a dwelling resulting in the death of Danica Concha, to support the felony murder conviction, without also requiring the jury to separately find Defendant guilty of that same predicate felony. A separate verdict form regarding the felony of shooting at a dwelling resulting in the death of Danica Concha was not necessary because this felony was subsumed within the felony murder instruction. Finding all of the elements of shooting at a dwelling plus the elements of felony murder elevated what would have been a second degree murder to a first degree murder. *State v. Montoya*, 2013-NMSC-020, ¶ 15, ___ P.3d ___ (providing that "felony murder is a second-degree murder that is elevated to first-degree murder when the murder was committed during the commission . . . of some other dangerous felony"). It was as though the felony murder instruction had actually read as follows:

> For you to find the defendant Orlando Torrez guilty of felony murder, which is first degree murder, as charged in the alternative in Count 1, the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant Orlando Torrez willfully shot a firearm at a dwelling or occupied building;
>
> 2. The defendant knew that the building was a dwelling or occupied;
>
> 3. Orlando Torrez caused the death of Danica Concha;
>
> 4. Orlando Torrez intended to kill or knew that his acts created a strong probability of death or great bodily harm;
>
> 5. The defendant did not act in self-defense;
>
> 6. This happened in New Mexico on or about the 1ˢᵗ day of November, 2003.

Simply stated, the felony shooting at a dwelling in Count 2 was not the predicate felony for the felony murder conviction.

**{22}** Had the district court instructed the jury to return verdicts on felony murder as well as the shooting at a dwelling resulting in the death of Danica Concha and shooting at a dwelling under Count 2, guilty verdicts on all three would have required the court to vacate

the conviction of shooting at a dwelling resulting in the death of Danica Concha to avoid a double jeopardy violation. The district court astutely avoided the double jeopardy violation by not requiring the jury to return a separate verdict on the shooting at a dwelling felony that served as the predicate for the felony murder conviction.

{23} Defendant shot multiple times at an occupied dwelling, killing one person and injuring another. The felony murder conviction results in the punishment for the death, and the conviction for shooting at a dwelling results in the punishment for the harm to the injured victim. We therefore reject Defendant's argument. We affirm his convictions for felony murder, with shooting at a dwelling resulting in the death of Danica Concha as the predicate felony, and his separate conviction for shooting at a dwelling under Count 2 of the indictment.

## III. JURY INSTRUCTIONS

{24} Defendant contends that the district court erred when it declined to give two instructions that he requested. The first instruction he requested relates to the possible loss, destruction, or alteration of evidence by law enforcement officers, and his second requested instruction was that Defendant acted in defense of others. "The propriety of denying a jury instruction is a mixed question of law and fact that we review de novo." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted). For the following reasons, we conclude that the district court correctly declined to give both instructions.

### A. The District Court Did Not Err in Refusing Defendant's Requested Jury Instruction Regarding Uncollected Evidence

{25} Two police officers, Charlie Martinez and Lori Garcia, a/k/a Lori Lopez, testified that during their investigation of the shooting, they observed spent and unspent bullet casings in the house where the party was held, but that the bullet casings were never collected as evidence. Several spent .22 bullet casings were also observed on the ground outside the house, and although these bullet casings were photographed, they too were not collected. The district court refused an instruction requested by Defendant that would have allowed the jury to assume that evidence was unfavorable to the prosecution if the jurors found that the evidence was "lost, destroyed or altered . . . without a reasonable explanation." Defendant argues that had the spent bullet casings been collected, such evidence would have bolstered his theory of the case, which was that he shot toward the house at people who were shooting at him.

{26} The case that controls the disposition of this issue is *State v. Ware*, 118 N.M. 319, 881 P.2d 679 (1994). In *Ware*, police officers responded to a domestic violence call and found a woman with a wound to the back of her head. *Id.* at 320, 881 P.2d at 680. The woman's boyfriend was also at the scene, and had blood on his body and clothing. *Id.* While investigating the crime, the officers found a rock that had blood on it. *Id.* They

9

photographed the rock but they did not collect it as evidence, nor did they take samples from it. *Id.* The defendant was charged with three counts of aggravated battery with a deadly weapon, and he sought dismissal of the charges or suppression of any photographs of or testimony about the rock. *Id.*

**{27}** We adopted a two-step approach in analyzing whether the defendant in *Ware* was entitled to a remedy for the investigators' failure to collect the rock and preserve it as evidence. *Id.* at 325, 881 P.2d at 685. First, the district court must determine as a matter of law whether the evidence that the state failed to gather from the crime scene is material to the defendant's defense, as opposed to being extraneous or duplicative of other evidence. *Id.* If the evidence is immaterial, then sanctioning the state when police fail to gather evidence from the crime scene is not appropriate. *Id.* "Evidence is material only if there is a reasonable probability that, had the evidence been [available] to the defense, the result of the proceeding would have been different." *Id.* (alteration in original) (internal quotation marks and citation omitted). Further, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted).

**{28}** The second step requires the district court to look at the conduct of the investigating officers, but only if the court first concludes that the evidence is material to the defendant's defense. *Id.*

> If the trial court determines that the failure to collect the evidence was done in bad faith, in an attempt to prejudice the defendant's case, then the trial court may order the evidence suppressed. If it is determined that the officers were grossly negligent in failing to gather the evidence—for example, by acting directly contrary to standard police investigatory procedure—then the trial court may instruct the jury that it can infer that the material evidence not gathered from the crime scene would be unfavorable to the State. When the failure to gather evidence is merely negligent, an oversight, or done in good faith, sanctions are inappropriate, but the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt.

*Id.* at 325-26, 881 P.2d at 685-86.

**{29}** In applying this two-part test, the *Ware* court determined "that the rock allegedly used to batter [the victim was] material to Defendant's defense," and concluded that evidence about the rock should not have been suppressed. *Id.* at 326, 881 P.2d at 686.

> Although it is a close call, we believe that there is a reasonable probability that the unavailability of the rock could affect the outcome of the case. However, much like the case in [*People v.*] *Bradley*, [205 Cal. Rptr. 485 (Ct. App. 1984),] the record before us indicates that the decision to photograph

10

the rock, rather than collect it as physical evidence, was a judgment call and certainly not anything more than mere inadvertence or ordinary negligence on the part of the police. Thus, we hold that suppression of the evidence of the rock was inappropriate and that the trial court abused its discretion by suppressing this evidence.

*Id.*

**{30}** In this case, there are two sets of .22 bullet casings at issue—a set from inside the house that was apparently neither photographed nor collected, but which is referenced in police reports and testimony, and a set from outside the house that was photographed but never collected. Defendant alleges that he shot toward the house after being shot at by people inside or near the house, and that the casings or photographs of the casings in the house could have added support for his defense. The State argues that the bullet casings were not material to Defendant's defense because they would not have provided any additional information other than that provided by the testimony of Officers Charlie Martinez and Lori Garcia, a/k/a Lori Lopez.

**{31}** Defendant has not explained how it is reasonably probable that had photographs of the casings or the casings themselves been introduced into evidence, the result of his trial would have been different. The existence of shell casings inside the house was not in dispute.

**{32}** Even if we were to give Defendant the benefit of any doubt and find that the uncollected evidence was material to his defense, he still was not entitled to the jury instruction he requested. Defendant does not contend that the officers acted in bad faith, or even that their failure to collect the evidence was grossly negligent. Instead, Defendant asserts that he was entitled to the requested jury instruction because of the "negligently lost evidence." In *Ware*, we stated that if the court determines

> that the officers were grossly negligent in failing to gather the evidence—for example, by acting directly contrary to standard police investigatory procedure—then the trial court may instruct the jury that it can infer that the material evidence not gathered from the crime scene would be unfavorable to the State.

118 N.M. at 325, 881 P.2d at 685. A claim that officers negligently failed to gather evidence is simply not enough to warrant the instruction. *Id.* at 325-26, 881 P.2d at 685-86. Because Defendant did not tender any evidence to support a finding that the officers were grossly negligent, the district court did not err in rejecting Defendant's tendered jury instruction.

## B. The District Court Did Not Err in Refusing to Instruct on Defense of Another

**{33}** Defendant requested and was refused a "defense of another" instruction. He

11

contends that the district court erred in denying the instruction for two reasons. First, because the instruction was given in the first trial and the State did not object to it during the first trial, the instruction became the law of the case, which obligated the court in the new trial to give the same instruction. Second, the evidence supported giving the instruction. The State argues that there was no evidence that Defendant was acting in defense of another, and therefore refusal of the instruction was proper.

**{34}** To support his argument, Defendant cites *McMinn v. MBF Operating Acquisition Corp.*, 2007-NMSC-040, ¶ 53, 142 N.M. 160, 164 P.3d 41, for the proposition that "[j]ury instructions not objected to become law of the case." (Internal quotation marks and citation omitted.) In *McMinn*, this rule was applied in a civil case to preclude a party who agreed to an instruction during the trial from challenging the law as contained in the instruction on appeal. *See id.* (emphasizing the party's acquiescence throughout trial to the rule stated in the jury instruction). While there is also criminal case law in New Mexico that holds that jury instructions are the law of the case, the doctrine does not apply in the way that Defendant suggests. *See, e.g.*, *State v. Armijo*, 1999-NMCA-087, ¶ 8, 127 N.M. 594, 985 P.2d 764 (stating that jury instructions become the law of the case, and they establish the elements the State must prove). Contrary to Defendant's argument, during a retrial of a case from remand on appeal, a judge is not required to give the same instructions that were given during the first trial. *See generally People v. Sons*, 78 Cal. Rptr. 3d 679, 689 (Ct. App. 2008) (judge in the defendant's fourth trial for homicide was not bound by the decision of the judge in the defendant's second and third trials to give the instruction). The retrial is a new trial, and the judge has the responsibility of instructing the jury on a claim or defense only if evidence introduced during the new trial warrants the instruction. Other than his out-of-context citation to *McMinn*, Defendant does not cite to any case law to support his argument that the same instructions in the first trial must be given during any retrial. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) ("We assume where arguments in briefs are unsupported by cited authority, [that] counsel . . . was unable to find any supporting authority.").

**{35}** Thus, the real question is whether there was sufficient evidence during the new trial to allow reasonable minds to differ as to all of the elements of defense of another. *State v. Jernigan*, 2006-NMSC-003, ¶ 3, 139 N.M. 1, 127 P.3d 537 ("Failure to instruct a jury on a defendant's theory of the case is reversible error."). Those elements are (1) there was an appearance that some other individual was in immediate danger of death or great bodily harm—in this case, Alfredo and his girlfriend, Ernestina; (2) Defendant believed that Alfredo and Ernestina were in immediate danger of death or great bodily harm, and Defendant's actions would have prevented such harm; and (3) the apparent danger to Alfredo and Ernestina would have caused a reasonable person in the same circumstances to act as Defendant did. UJI 14-5184 NMRA.

**{36}** The district court refused the defense of another instruction because it concluded that there was no evidence that the reason Defendant shot in the direction of the house was that shots were being fired in the direction of Defendant's vehicle, where Alfredo and Ernestina

were allegedly waiting. Defense counsel argued to the district court that while "there isn't direct testimony that [Defendant] was shooting for their behalf, . . . I think that one could infer that." The State countered that Defendant never testified that he shot back to protect Alfredo or Ernestina; rather, he claimed that he shot back to defend himself.

{37}    In *Jernigan*, we found no error in the district court's refusal to instruct on defense of another when the evidence at trial showed that the defendant shot two men after he confronted them about attacking a woman and they appeared to be reaching for guns. 2006-NMSC-003, ¶¶ 5-7. We noted that this evidence supported a self-defense instruction, which was given, but not a defense of another instruction, because the evidence did not support an appearance that the woman was in immediate danger. *Id.* ¶ 6 n.2. The same is true in the instant case. The evidence supports a self-defense instruction, which was given. There was no evidence that Defendant shot to protect anyone other than himself. Defendant only testified that he shot back because the people from the house were shooting at him. In addition, Alfredo testified that he was not aware of any bullets reaching the vicinity of the car where he was standing, which discredits Defendant's argument that Alfredo was in immediate danger. We therefore affirm the district court's refusal to instruct on defense of another.

## IV.    COMPULSORY PROCESS

{38}    Ronnie Trujillo, whom Defendant believed was a person who shot at him upon his return to the party, was subpoenaed by Defendant to appear and testify. However, Ronnie did not appear to testify. Defendant asserts that because Ronnie did not honor the subpoena and appear to testify, Defendant was deprived of his right to compulsory process. Without citing to the record, Defendant claims that he requested a mistrial, but we were unable to find where in the record such a request was made. In any event, Defendant's argument is without merit.

{39}    In this case, the district court suggested that the proper remedy when a subpoenaed witness does not appear to testify is for the court to issue a bench warrant for the arrest of the witness. Defense counsel acknowledged that this is indeed a remedy, but noted that the issuance of a bench warrant would be a waste of time. The district court did not abuse its discretion by declining to grant Defendant a mistrial, assuming that Defendant requested one, because issuance of a bench warrant, which Defendant declined, was the appropriate remedy. *See State v. Montoya*, 91 N.M. 752, 753-54, 580 P.2d 973, 974-75 (Ct. App. 1978) (holding that the trial court did not abuse its discretion in refusing to issue a bench warrant for the arrest of a subpoenaed witness who did not appear to testify). Moreover, despite Defendant's belief that Ronnie shot at him, defense counsel admitted that he did not have any witnesses who placed Ronnie at the scene the night of the shooting. We reject Defendant's contention that his right to compulsory process was violated.

## V.    SUFFICIENCY OF THE EVIDENCE

**{40}** Defendant contends in a vague and unilluminating argument that there was insufficient evidence to support his convictions for felony murder, shooting at a dwelling, and tampering with evidence.

> "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The question before us as a reviewing [c]ourt is not whether we would have had a reasonable doubt [about guilt] but whether it would have been impermissibly unreasonable for a jury to have concluded otherwise." *See State v. Rudolfo*, 2008-NMSC-036, ¶ 29, 144 N.M. 305, 187 P.3d 170.

*State v. Guerra*, 2012-NMSC-027, ¶ 10, 284 P.3d 1076 (alterations in original). Applying this standard of review, we conclude that there is sufficient evidence to support each verdict beyond a reasonable doubt.

## A.    Felony Murder

**{41}** Felony murder consists of committing a crime (in this case, shooting at a dwelling), and during the commission of that crime, killing someone with the intent to kill or with the knowledge that the defendant's acts created a strong probability of death or great bodily harm. UJI 14-202 NMRA. Shooting at a dwelling (great bodily harm) consists of willfully shooting a firearm at a dwelling with the knowledge that the building was a dwelling and causing death or great bodily harm. UJI 14-341 NMRA.

**{42}** Defendant admitted that he shot toward a house multiple times with two different weapons while a party was in progress, and the jury rejected his self-defense claim. *See State v. Cabezuela*, 2011-NMSC-041, ¶ 45, 150 N.M. 654, 265 P.3d 705 (stating that the jury is free to reject the defendant's version of events in the context of a sufficiency of the evidence review). In addition, several witnesses, including Ron Anderson, Katrina Branchal, and Ryan Romero, testified that when Defendant returned to the house where the party was taking place, he opened fire on the house without anyone else firing back at him. It is undisputed that Danica Concha died as a result of a shot fired by Defendant. This evidence supports the felony murder conviction beyond a reasonable doubt.

## B.    Shooting at a Dwelling

**{43}** For Defendant's conviction under Count 2 of shooting at a dwelling or occupied

14

building, the elements that must be proven beyond a reasonable doubt are willfully shooting a firearm at a dwelling or occupied building, with the knowledge that the building was a dwelling or was occupied. UJI 14-340. Ron Anderson, Katrina Branchal, and Ryan Romero testified that when Defendant returned to the house where the party was taking place, he opened fire on the house without anyone else firing back at him. In addition, Naarah Holgate testified that she was wounded by the gunfire. This testimony, when combined, supports Defendant's conviction under Count 2 for shooting at a dwelling. We previously discussed the fact that the district court did not specifically instruct the jury that it had to find that Holgate suffered an injury as a result of the shooting. The effect of failing to instruct the jury accordingly is to require that on remand the district court amend the judgment and sentence to conform to the jury verdict. *Soliz*, 79 N.M. at 267, 442 P.2d at 579.

## C.     Tampering with Evidence

**{44}**     "Tampering with evidence consists of destroying, changing, hiding, placing or fabricating any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." NMSA 1978, § 30-22-5(A) (1963, as amended through 2003). Defendant testified that immediately after the shooting, he took most of the guns and put them behind his refrigerator. Intent to hide evidence can be inferred based upon a person's acts. *See State v. Rudolfo*, 2008-NMSC-036, ¶¶ 30-32, 144 N.M. 305, 187 P.3d 170 (finding evidence sufficient when the defendant hid weapons used during the commission of a crime in his car and attempted to flee the jurisdiction). Although perhaps thin, this evidence, when looked at in the light most favorable to the jury verdict, supports the conclusion that tampering with evidence was proven beyond a reasonable doubt.

## III.     CONCLUSION

**{45}**     We affirm Defendant's convictions for felony murder and tampering with evidence. With respect to the conviction for shooting at a dwelling, we affirm the jury verdict, but remand to the district court to amend the judgment to reflect the jury verdict of guilty of shooting at a dwelling, a fourth degree felony. *See* NMSA 1978, § 30-3-8(A) (1993) ("Whoever commits shooting at a dwelling or occupied building that does not result in great bodily harm to another person is guilty of a fourth degree felony.").

**{46}     IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**


**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Chief Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**CHARLES W. DANIELS, Justice**

_____

**BARBARA J. VIGIL, Justice**

**Topic Index for *State v. Torrez*, No. 32,929**

**APPEAL AND ERROR**
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Double Jeopardy
New Mexico Constitution, General

**CRIMINAL LAW**
Elements of Offense
Felony Murder
Shooting Offences
Tampering

**CRIMINAL PROCEDURE**
Double Jeopardy

**JURY INSTRUCTIONS**
Criminal Jury Instruction
Failure to Give or Request