**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:** _____

**Filing Date: February 17, 2014**

**Docket No. 31,975 & 32,546 (Consolidated)**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellant/Cross-Appellee,**

**v.**

**JESUS OSCAR DOMINGUEZ,**

       **Defendant-Appellee/Cross-Appellant,**

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Gary K. King, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellant/Cross-Appellee

Jorge A. Alvarado, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellee/Cross-Appellant

## OPINION

**FRY, Judge.**

**{1}** In this case, both Defendant and the State appeal following Defendant's convictions for kidnapping and second-degree criminal sexual penetration (CSP II). Defendant argues that his convictions for kidnapping and CSP II violate double jeopardy, that the State presented insufficient evidence for either conviction, and that the prosecutor committed prosecutorial misconduct. Conversely, the State argues that the district court erred when it modified Defendant's conviction for first-degree kidnapping to second-degree kidnapping because the jury was not given a special verdict form asking them to find whether Defendant

1

committed a sexual offense against Victim. Finding none of Defendant's contentions meritorious, we affirm his convictions. However, we conclude that the district court erred in modifying Defendant's conviction and remand to reinstate Defendant's conviction for first-degree kidnapping.

## BACKGROUND

**{2}**    Victim was home alone asleep with her young daughter when she was awoken by the sound of knocking and noticed a man outside her bedroom window. Victim went to the front door to see who was there and was confronted by Defendant, who asked whether her father-in-law or her husband were home. After Victim told him that neither was home, Defendant asked if she had a gas can he could borrow because he had run out of gas. Defendant waited at the front door while Victim went to look for the gas can. When Victim told Defendant that she did not have one, Defendant then asked if he could use her restroom. Victim testified that although she did not know Defendant, she allowed him into the home because she thought Defendant knew her father-in-law.

**{3}**    Defendant entered Victim's home and went to the bathroom. When Defendant emerged from the bathroom, he pulled a gun from the pocket of his hooded sweatshirt. Defendant put the gun to Victim's head and told her he planned to rape her. Defendant further threatened to kill Victim's daughter if she did not comply. Defendant, however, agreed to Victim's requests that he wear a condom and not rape her in the living room because it was adjacent to the room where her daughter was sleeping. While holding the gun to Victim's head, Defendant then followed Victim to the kitchen, where she retrieved a condom, and to a second bedroom, where he vaginally raped Victim.

## DISCUSSION

**{4}**    We begin our analysis with Defendant's contention that his convictions for kidnapping and CSP II violate double jeopardy. Due to the similarity between Defendant's double jeopardy argument and his argument that there is insufficient evidence to support his kidnapping conviction, our resolution of Defendant's double jeopardy argument is largely determinative of his insufficiency of the evidence argument. Indeed, in the context of combined kidnapping and sexual offense convictions, these two areas of law have generated considerable analytical overlap in our case law. *See, e.g.*, *State v. Allen*, 2000-NMSC-002, ¶¶ 62, 67, 128 N.M. 482, 994 P.2d 728 (incorporating double jeopardy principles into analysis of whether there was sufficient evidence to convict the defendant of kidnapping where the defendant argued that the force used in the kidnapping was the same force used in the attempted CSP). We therefore consider these contentions together.

I.    **Double Jeopardy and the Independent Factual Basis to Support Defendant's Conviction for Kidnapping**

**A.      Double Jeopardy**

**{5}**      The State charged Defendant with CSP II on the basis of his use of a gun during the CSP.  *See* NMSA 1978, § 30-9-11(E)(6) (2009) (stating that CSP II includes CSP perpetrated "when the perpetrator is armed with a deadly weapon").  The State also charged Defendant with kidnapping, and the jury was instructed that the elements of kidnapping were Defendant's taking, restraint, confinement, or transportation of Victim "by force, intimidation[,] or deception" and Defendant's intending to "hold [Victim] against [her] will to inflict a sexual offense on [her]."  Because CSP II by definition includes "some force or restraint," *State v. Crain*, 1997-NMCA-101, ¶ 21, 124 N.M. 84, 946 P.2d 1095, Defendant argues that the force or restraint associated with the CSP II is the same force or restraint associated with kidnapping.  Thus, he contends that his right to be free from double jeopardy was violated when he was sentenced for both crimes.

**{6}**      "The Fifth Amendment of the United States Constitution prohibits double jeopardy and is made applicable to New Mexico by the Fourteenth Amendment." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747.  This is a constitutional question of law that we review de novo. *Id.*

**{7}**      The double jeopardy clause provides three separate constitutional protections.  It provides protection from (1) "a second prosecution for the same offense after acquittal[,]" (2) "a second prosecution for the same offense after conviction[,]" and (3) "multiple punishments for the same offense."  *State v. Montoya*, 2011-NMCA-074, ¶ 29, 150 N.M. 415, 259 P.3d 820 (internal quotation marks and citation omitted).  Within the multiple punishment context—which is the analysis we are concerned with in this case—there are two types of cases:  (1) "unit-of-prosecution" cases, where the defendant has been convicted of multiple violations of the same statute; and (2) "double-description" cases, where the defendant has been convicted of violations of multiple statutes for the same conduct. *Swick*, 2012-NMSC-018, ¶ 10.  Because Defendant argues that his convictions arise from the same conduct but under different statutes, this is a double-description case. We analyze double-description cases under the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, 112 N.M. 3, 810 P.2d 1223.  Under *Swafford*, we first consider whether the conduct underlying the two convictions was unitary.  Only if we conclude that the conduct was unitary do we then consider whether the Legislature intended to punish the two crimes separately. *Swick*, 2012-NMSC-018, ¶ 11.

**{8}**      "Conduct is not unitary if sufficient indicia of distinctness separate the transaction into several acts." *Montoya*, 2011-NMCA-074, ¶ 31 (internal quotation marks omitted). "Distinctness" can be established by "looking to the quality and nature of the acts, the objects and results involved, and the defendant's *mens rea* and goals during each act." *State v. Saiz*, 2008-NMSC-048, ¶ 30, 144 N.M. 663, 191 P.3d 521, *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783.

**{9}**      Relying on this Court's decision in *Montoya*, Defendant argues that the conduct

3

supporting both convictions was unitary because the jury may have relied upon the fact that Defendant used the same type of force—the gun—as the basis for both convictions. *Montoya*, 2011-NMCA-074, ¶ 37 ("[U]nitary conduct occurs when the state bases its theory of kidnap[p]ing on the same force used to commit CSP II . . . even though there were alternative ways to charge the crime.") In *Montoya*, the jury was given a general kidnapping instruction, although two factual bases—one in violation of the defendant's double jeopardy rights—supported the conviction. *Id.* ¶¶ 38-39. We presumed the defendant's conduct was unitary because we were unable to determine from the record which of the alternative basis for the defendant's kidnapping charge was found by the jury to support the conviction. *Id.* ¶ 39; *see State v. Foster*, 1999-NMSC-007, ¶ 2, 126 N.M. 646, 974 P.2d 140 ("Under these circumstances, we must reverse a conviction if one of the alternative bases for the conviction provided in the jury instructions is legally inadequate because it violates a defendant's constitutional right to be free from double jeopardy."), *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. In analogizing to *Montoya*, Defendant argues that because we are unable to determine whether his kidnapping conviction rested on his use of the gun to restrain Victim or on his deceptive conduct in entering her home, we must presume that the jury relied on a legally inadequate basis—the gun—for both the kidnapping and CSP II.

**{10}** Regardless of which alternative the jury relied on, we conclude that Defendant's conduct was not unitary because either alternative—kidnapping by deception or by force—was factually distinct from the conduct supporting the CSP II conviction. *See State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 ("The proper analytical framework [for determining unitary conduct] is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." (internal quotation marks and citation omitted)). The crime of kidnapping is complete when the defendant, with the requisite intent, restrains the victim, even though the restraint continues through the commission of a separate crime. *State v. McGuire*, 1990-NMSC-067, ¶ 10, 110 N.M. 304, 795 P.2d 996 ("Once [the] defendant restrained the victim with the requisite intent to hold her for service against her will, he had committed the crime of kidnapping, although the kidnapping continued throughout the course of [the] defendant's other crimes[.]"). "[T]he key to finding the restraint element in kidnapping, separate from that involved in criminal sexual penetration, is to determine the point at which the physical association between the defendant and the victim was no longer voluntary." *State v. Jacobs*, 2000-NMSC-026, ¶ 24, 129 N.M. 448, 10 P.3d 127. Even assuming the factual basis for Defendant's kidnapping conviction was the use of the gun, the kidnapping was complete, and therefore factually distinct, when Defendant, stating his intention to rape Victim, pulled the gun from his clothing. *See id.* ¶ 25 (holding that crimes of kidnapping and attempted CSP were factually distinct where "the . . . kidnapping was complete before . . . the act of attempted criminal sexual penetration"); *Montoya*, 2011-NMCA-074, ¶ 31 ("Sufficient indicia of distinctness exist when one crime is completed before another[.]" (internal quotation marks and citation omitted)). At this point, the association between Defendant and Victim was no longer voluntary, and it was not until Defendant moved Victim to the back bedroom that he used the gun to restrain her during the CSP. That Defendant used the same

4

*type* of force to restrain Victim during the kidnapping and during the CSP does not create unitary conduct out of the independent and factually distinct bases for these crimes. *See Allen*, 2000-NMSC-002, ¶ 70 ("[I]f there was a basis for the jury to find factually distinct bases for kidnapping [and] attempted CSP, . . . then the conduct is considered non-unitary.").

**{11}**     Because we conclude that Defendant's conduct was not unitary, we do not proceed to the second part of the *Swafford* analysis. Being non-unitary, Defendant's convictions do not violate double jeopardy.

### B.     Sufficiency of the Evidence for Kidnapping

**{12}**     For these same reasons, we reject Defendant's contention that the force used to convict Defendant of kidnapping was incidental to the CSP II. *See State v. Trujillo*, 2012-NMCA-112, ¶ 39, 289 P.3d 238 (concluding that evidence of a restraint incidental to an aggravated battery was insufficient to support a conviction for kidnapping), *cert. granted*, 2012-NMCERT-011, 297 P.3d 1227. We emphasize that it is not the same *type* of force that is material to the determination of whether the restraint supporting the kidnapping conviction was incidental to the separate crime. Instead, we must determine whether the force used *during* the other crime, in this case CSP II, is the only evidence of force supporting both the kidnapping conviction and the separate offense. *Montoya*, 2011-NMCA-074, ¶ 38 ("[B]ecause some force or restraint is involved in every sexual penetration without consent, kidnap[p]ing cannot be charged out of every CSP without a showing of force or restraint separate from the CSP."); *State v. Pisio*, 1994-NMCA-152, ¶ 38, 119 N.M. 252, 889 P.2d 860 ("[F]orce or coercion exerted prior to the [sexual offense] itself will support a conviction for kidnapping[.]"). As we concluded above, there was evidence of independent uses of force and intimidation before the CSP that supported Defendant's kidnapping conviction. *See Allen*, 2000-NMSC-002, ¶ 67 ("When there is evidence that the perpetrator forcibly abducted the victim before attempting sexual penetration or continued to use force or restraint after the sex act was completed, . . . we have rejected the proposition that the kidnapping is indistinguishable from the sex offense."). Under no reading of *Trujillo* would Defendant's force and intimidation in effectuating the initial restraint supporting the kidnapping conviction be considered "merely incidental" to the CSP II as a matter of law, *see* 2012-NMCA-112, ¶ 6, nor was it the type of force "necessarily involved" in every CSP. *Id.* ¶ 21; *see State v. Corneau*, 1989-NMCA-040, ¶ 11, 109 N.M. 81, 781 P.2d 1159 (concluding that "[e]vidence exist[ed] in the record to support a finding by the jury that the underlying felony of false imprisonment was separate and apart from any false imprisonment necessarily involved in almost every act of CSP"). We thus conclude that there was sufficient evidence of force and intimidation, independent of the force used during the CSP, to support Defendant's kidnapping conviction.

### II.     Modification of Defendant's Conviction

**{13}**     The uniform jury instructions necessary to convict a defendant of first-degree kidnapping are split into two instructions. *See* UJI 14-403 NMRA Use Note 1 (stating that

5

where first-degree kidnapping is in issue, UJI 14-6018 NMRA must also be given). UJI 14-403 contains the essential elements of the offense, while UJI 14-6018 contains specific interrogatories asking whether the jury finds that the defendant did not voluntarily free the victim or whether the defendant inflicted physical harm or committed a sexual offense upon the victim. If the jury answers any of these questions in the affirmative—assuming it also found the essential elements were met—the defendant is guilty of first degree kidnapping. *See* UJI 14-6018 Use Note 1 ("The defendant may be found guilty of first degree kidnapping if the jury answers any or all of the above questions, 'yes.' If none of the questions is answered 'yes,' the defendant is guilty of second degree kidnapping.").

**{14}** Following Defendant's convictions for CSP II and kidnapping, the district court initially orally sentenced Defendant to eighteen years for first-degree kidnapping. *See* NMSA 1978, § 31-18-15(A)(3) (2007) (providing for eighteen-year sentences for first-degree felonies). Defendant refused to approve the judgment and sentencing order and instead filed a motion to quash the sentence. Defendant argued that because the jury had not been given the kidnapping special verdict form, the kidnapping jury instruction submitted to the jury was only sufficient to convict him of second-degree kidnapping. *See* UJI 14-403 (kidnapping essential elements jury instruction); UJI 14-6018 (special verdict form for kidnapping). The district court ultimately agreed with Defendant and concluded that the special verdict form is mandatory in all first-degree kidnapping cases. *State v. Gallegos*, 2009-NMSC-017, ¶¶ 17-18, 146 N.M. 88, 206 P.3d 993. The court therefore reduced Defendant's conviction to second-degree kidnapping because the jury did not find, pursuant to the special verdict form, that Defendant committed a sexual offense against Victim.

**{15}** On appeal, the State's argument is two-fold. First, the State argues that to the extent the special verdict form required the jury to find that Defendant committed a sexual offense against Victim in order to convict him of first-degree kidnapping, the special verdict form is in conflict with our kidnapping statute. Second, the State argues that because the jury independently found Defendant guilty of CSP II, they had necessarily found the facts needed to convict Defendant of first-degree kidnapping regardless of the omission of the special verdict form. We agree with the State's second contention that it was error for the district court to modify Defendant's conviction because the jury specifically found that Defendant committed a sexual offense against Victim. We therefore reverse the district court's modification of Defendant's sentence.

**{16}** Our kidnapping statute defines kidnapping as "the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict . . . a sexual offense on the victim." NMSA 1978, § 30-4-1(A)(4) (2003). Subsection B states that "[w]hoever commits kidnapping is guilty of a first[-] degree felony, except that he is guilty of a second[-]degree felony when he . . . does not inflict . . . a sexual offense upon the victim." Section 30-4-1(B). The kidnapping essential elements uniform jury instruction substantially tracks the elements that the kidnapping statute defines as a first-degree kidnapping. *See* UJI 14-403. Thus, it would appear that where the jury in this case found that Defendant restrained Victim by force or deception with the *intent* to inflict a

6

sexual offense upon her, Defendant was found guilty of first-degree kidnapping. It would also stand to reason, based on our kidnapping statute as written, that only if the jury found that Defendant did not actually commit the intended sexual offense could his offense constitute second-degree kidnapping.[1]

{17}   Nevertheless, we must take into account the UJI use notes and recent statements by our Supreme Court. UJI 14-403 requires that UJI 14-6018 also be given where first-degree kidnapping is in issue. UJI 14-403 (stating in Use Note 1 that "[i]f first[-]degree kidnapping is an issue, Instruction 14-6018 NMRA is also given); *State v. Barber*, 2004-NMSC-019, ¶ 10 n.1, 135 N.M. 621, 92 P.3d 633 (recognizing that use notes are binding authority). Similarly, Use Note 1 of 14-6018 requires the instruction to "be used if there is an issue . . . as to whether the defendant committed a sexual offense upon the victim." The committee commentary to UJI 14-403, which, unlike use notes, are not binding authority, further states that "[t]his instruction is for the crime of second[-]degree felony kidnapping where the victim is freed without great bodily harm having been inflicted."[2] *See Barber*, 2004-NMSC-019, ¶ 10 n.1 (stating that committee commentaries are not binding authority). Our Supreme Court has relied on this language, albeit in dicta, to conclude that the elements in UJI 14-403 only "establish the offense of second-degree kidnapping." *Gallegos*, 2009-NMSC-017, ¶ 13; *see* UJI 14-6018 Use Note 1 (stating that if the jury answers no to the question of whether the defendant committed a sexual offense upon the victim, in addition to other interrogatories, "the defendant is guilty of second[-] degree kidnapping"). Given that use notes constitute binding authority and that our Supreme Court has indicated that a conviction under the elements of UJI 14-403 only establishes a second-degree kidnapping, we understand the district court's reluctance to adjudicate Defendant guilty of first-degree kidnapping in the absence of specific findings by the jury that Defendant committed a sexual offense against Victim pursuant to the special verdict form. *See* UJI 14-6018.

{18}   While we understand the importance of providing mandatory uniform jury instructions, *see* UJI-Criminal, General Use Note (stating that "[w]hen a uniform instruction is provided for the elements of a crime, a defense or a general explanatory instruction on evidence or trial procedure, the uniform instruction must be used without substantive modification or substitution"), we cannot conclude that failure to give a mandatory instruction automatically results in reversal or modification of an otherwise valid conviction. Indeed, our Supreme Court has recognized before that the failure to give a jury instruction, described as mandatory by the use note, does not automatically require reversal. *State v.*

---

[1]More specifically, the jury would have to find that Defendant did not release Victim in a safe place *and* did not commit the sexual offense or otherwise physically harm Victim. Section 30-4-1(B).

[2]Arguably, the committee commentary is intended to mean that where the victim was freed without great bodily harm having been inflicted, this instruction should serve as the jury instruction for second-degree kidnapping.

7

*Doe*, 1983-NMSC-096, ¶ 10, 100 N.M. 481, 672 P.2d 654 ("We hold that the failure to give [the jury instruction] does not automatically require reversal solely because the [u]se [n]ote provides that it must be given[.]"). Instead, it is the failure to give a mandatory instruction on the law essential for a conviction that constitutes reversible error. *See id.* ¶ 6; *State v. Otto*, 1982-NMCA-149, ¶ 6, 98 N.M. 734, 652 P.2d 756. In these circumstances, we look to the jury instructions as a whole to determine whether the jury was properly instructed on the elements of the crime. *See Doe*, 1983-NMSC-096, ¶ 10.

**{19}**    As we discussed above, in order to convict Defendant of kidnapping, the jury was required to find that Defendant (1) took, restrained, confined, or transported Victim, (2) by force, intimidation, or deception, and (3) with the intention to inflict a sexual offense on her. *See* UJI 14-403. For CSP II, the jury was asked whether Defendant caused Victim to engage in sexual intercourse while armed with a firearm. Neither party disputes that the jury was properly instructed on the essential elements of these offenses and returned affirmative findings. However, in order to convict of first-degree kidnapping, according to the special verdict form, the jury was required to further find that Defendant committed a sexual offense upon Victim. *See* UJI 14-6018 (Question 3) ("Do you unanimously find beyond a reasonable doubt that the defendant committed a sexual offense upon [the victim]?"). Here, the jury unquestionably found beyond a reasonable doubt that Defendant committed a sexual offense against Victim when it returned a guilty verdict on CSP II. This is all that is required under UJI 14-6018 to establish first-degree kidnapping. *See* UJI 14-6018 Use Note 1 ("Kidnapping is a second[-]degree offense unless the state meets its burden under Section 30-4-1(B) of proving that the defendant . . . [inflicted] a sexual offense upon the victim."). Therefore, because the jury instructions as a whole properly instructed the jury on the essential elements of first-degree kidnapping and the jury found Defendant guilty of kidnapping and CSP II, the district court erred in modifying Defendant's conviction. *See State v. Torrez*, 2013-NMSC-034, ¶ 10, 305 P.3d 944 ("[A] district court has a mandatory duty to enter a judgment and sentence consistent with the jury's verdict.").

### III.    Prosecutorial Misconduct

**{20}**    Defendant argues that he was deprived of a fair trial due to prosecutorial misconduct. Defendant's contentions can be grouped into two categories: (1) that during closing argument the prosecutor vouched for the credibility of Victim's testimony and, both explicitly and by inference, argued that Defendant was lying; and (2) that the prosecutor made inappropriate references to the CODIS system, thereby indicating that Defendant may have had prior convictions. We address these issues in turn.

### A.    Closing Argument

**{21}**    Defendant points to what he contends are multiple instances of improper statements by the prosecutor during closing argument. After the prosecutor stated that it was the jury's duty to determine the credibility of witnesses, the prosecutor stated that she would point out indicators that would help the jury decide that "[Victim] is not lying to you, and she's telling

8

you the truth about what happened." This included highlighting Victim's emotions while on the stand, the consistency of Victim's statements, and the absence of motive for Victim to be untruthful in her account of the events. Defendant also emphasizes the prosecutor's arguments that Defendant's version of events "[did] not make sense."

**{22}** Trial judges are afforded broad discretion in managing closing arguments because they are in the best position to assess the impact of allegedly improper statements by counsel. *State v. Sosa*, 2009-NMSC-056, ¶ 25, 147 N.M. 351, 223 P.3d 348. We therefore review for abuse of discretion and will only find reversible error in the "most exceptional circumstances." *See id.*

**{23}** Prosecutors are permitted to comment on the veracity of witnesses so long as the statements are based on the evidence—not personal opinion—and are not intended to incite the passion of the jury. *See State v. Aguilar*, 1994-NMSC-046, ¶ 22, 117 N.M. 501, 873 P.2d 247 ("Prosecutors may comment on witness's veracity as long as personal opinion is not expressed and as long as the comments are not intended to incite the passion of the jury." (internal quotation marks and citation omitted)); *State v. Pennington*, 1993-NMCA-037, ¶¶ 27, 29, 115 N.M. 372, 851 P.2d 494 (stating that it is permissible to highlight evidence that supports a witness's credibility). However, a prosecutor cannot vouch "for the credibility of a witness, either by invoking the authority and prestige of the prosecutor's office or by suggesting the prosecutor's special knowledge." *Pennington*, 1993-NMCA-037, ¶ 27.

**{24}** The prosecutor's statements regarding Victim's veracity do not run afoul of these prohibitions. The prosecutor did not personally vouch for Victim's credibility, either by insinuations of special knowledge or by virtue of her role as prosecutor. *See State v. Paiz*, 2006-NMCA-144, ¶ 55, 140 N.M. 815, 149 P.3d 579 (stating that vouching involves either "invoking the authority and prestige of the prosecutor's office or suggesting the prosecutor's special knowledge" (internal quotation marks and citation omitted)). She instead focused on specific indicators presented to the jury throughout the trial as evidence of the truthfulness of Victim's account. *See State v. Calvillo*, 1990-NMCA-046, ¶ 18, 110 N.M. 114, 792 P.2d 1157 ("A prosecutor may make comments about the evidence, and is given latitude in [her] closing argument, in which [she] may discuss inferences which can be drawn from the evidence.").

**{25}** Furthermore, the prosecutor's statements regarding the veracity of Defendant's story do not constitute misconduct. Defendant and Victim were the only witnesses to the event, and each testified to conflicting accounts. Where a case essentially revolves around "which of two conflicting stories is true, a party may reasonably infer, and thus argue, that the other side is lying." *Aguilar*, 1994-NMSC-046, ¶ 23. And where the defendant has testified, "[t]he [s]tate has a right to inquire into and comment upon the credibility of the defendant as a witness." *State v. Hoxsie*, 1984-NMSC-027, ¶ 6, 101 N.M. 7, 677 P.2d 620, *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 1989-NMSC-055, 108 N.M. 722, 779 P.2d 99; *see State v. Rojo*, 1999-NMSC-001, ¶ 56, 126 N.M. 438, 971 P.2d 829 (stating that "[t]he prosecutor may comment on the credibility of defense witnesses" including the

9

defendant himself (internal quotation marks and citation omitted)). Defendant makes no further argument that, beyond questioning the credibility of his story, the prosecutor's statements were intended to incite prejudice toward Defendant. *See Aguilar*, 1994-NMSC-046, ¶ 22. We accordingly find no prosecutorial misconduct in regard to these statements.

## B. Reference to CODIS

**{26}** Defendant was identified by DNA left at the scene. The DNA was run through the CODIS system and provided a positive match to Defendant. On appeal, Defendant concisely argues that "[t]he prosecutor, as described in the facts, also made inappropriate references to CODIS." Defendant makes no further argument as to why references to CODIS were inappropriate. In fact, upon reviewing Defendant's facts section, we found no reference to statements by the prosecutor regarding the CODIS system. We are thus unaware of what "inappropriate references" Defendant is referring to, and we will not search the record to find facts to support this argument. *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments.").

## IV. Evidence Supporting Defendant's CSP II Conviction

**{27}** Pursuant to *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1, Defendant argues that there was insufficient evidence to support his conviction for CSP II because he testified that he was in a consensual sexual relationship with Victim and there was no clear evidence introduced to establish that he forced Victim to engage in sexual intercourse.

**{28}** "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683. In order to convict Defendant of CSP II, the jury was required to find that Defendant caused Victim to engage in sexual intercourse and that he was armed with and used a gun. The jury chose to accept Victim's testimony that Defendant held a gun to her head while forcing her to engage in sexual intercourse. Thus, regardless of Defendant's contrary testimony, there was sufficient evidence to support his conviction. *See Rojo*, 1999-NMSC-001, ¶ 19 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

## CONCLUSION

**{29}** For the foregoing reasons, we reverse the district court's modification of Defendant's conviction and remand to reinstate Defendant's conviction for first degree kidnapping. We affirm Defendant's remaining convictions.

**{30}     IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**

11